**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Case No. 17-03016-01-CR-S-RK** |
| | ) | |
| **Plaintiff,** | ) | **Springfield, Missouri** |
| | ) | **November 15, 2017** |
| **v.** | ) | |
| | ) | |
| **ANTHONY DUNLAP,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**TRANSCRIPT OF HEARING ON CHANGE OF PLEA BEFORE THE HONORABLE DAVID P. RUSH UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Mr. James J. Kelleher<br>Assistant United States Attorney<br>901 St. Louis St., Ste. 500<br>Springfield, MO 65806<br>(417) 831-4406 |
| For the Defendant: | Ms. Erica Mynarich<br>901 St. Louis St., Ste. 1600<br>Springfield, MO 65806<br>(417) 831-6363 |
| Court Audio Operator: | Ms. Karla Berziel |
| Transcribed by: | Rapid Transcript<br>Lissa C. Whittaker<br>1001 West 65th Street<br>Kansas City, MO 64113<br>(816) 914-3613 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

(Court in Session at 2:30 p.m.)

THE COURT: Calling in *United States vs. Anthony Dunlap*. The defendant appears in person along with his attorney, Ms. Erica Mynarich. The United States appears by Assistant United States Attorney, Mr. Jim Kelleher. This matter is set this afternoon for a change of plea to Count One and Count Two of the Indictment returned against this defendant on January 18th, 2017. And, Ms. Mynarich, would you mind pulling the directional microphone in front of Mr. Dunlap. Yeah. And also for yourself. Again, the Court can hear you all fine but the transcriptionist sometimes will have difficulty hearing. Mr. Dunlap, you have signed a consent to have these proceedings for a plea of guilty before a Magistrate Judge, with the understanding that a United States District Judge, a judge of higher jurisdiction, will keep your case for acceptance of the plea of guilty and sentencing. Even though you signed this consent you have a right, if you wish, to appear before a United States District Judge, a judge of higher jurisdiction, for these proceedings. At any appearance before the District Judge, you're presumed innocent until such time, if ever, as the Government establishes your guilt beyond a reasonable doubt to the satisfaction of the judge or jury. You always have a right to be present and to confront and cross-examine witnesses. You have a right to use the power of the court to subpoena evidence on your behalf and you have a right to testify or not testify as you would choose. And if you chose not

to testify that would not be held against you as that is your right. If, after understanding the charges against you, the range of punishment, if convicted, and your right to appear before a District Judge, if you wish, you may waive or give up that right and proceed this afternoon before the Magistrate Judge. As I indicated, you have signed such a consent. Do you understand that you have a right to appear before a United States District Judge, a judge of higher jurisdiction, for these proceedings?

MR. DUNLAP: Yes.

THE COURT: And is it your desire to give up that right and proceed this afternoon before the Magistrate Judge?

MR. DUNLAP: You, right?

THE COURT: Yes, sir.

MR. DUNLAP: Yes.

THE COURT: All right. Thank you. Mr. Dunlap, do you understand the charge against you in Count One of the Indictment in this case?

MR. DUNLAP: What's the charge in Count One?

THE COURT: Count One charges that on or about January 3rd of 2017, within in Greene County, in the Western District of Missouri, the defendant by force, violence and intimidation, did take from the person or presence of another, United States currency -- oh, you've got a copy of the Indictment there. Thank you, Mr. Kelleher.

(Off Record Attorney-Client Discussion)

MR. DUNLAP: Yes, sir.

THE COURT: Okay. And do you understand that if convicted of the charge in Count One, that the maximum penalty the court may impose is not more than 20 years imprisonment, not more than a $250,000 fine, not more than three years supervised release, and a $100 mandatory special assessment?

MR. DUNLAP: Yes, Your Honor.

THE COURT: And to the charge in Count One, how do you wish to plead, guilty or not guilty?

MR. DUNLAP: Guilty.

THE COURT: And, Mr. Dunlap, do you understand the charge against you in Count Two of the Indictment in this case?

MR. DUNLAP: Yes, Your Honor.

THE COURT: And for the record, Ms. Mynarich, attorney for the defendant, is providing a copy of the Indictment to the defendant that he's referring to during the plea colloquy. Do you understand that if convicted of the charge in Count Two, that the maximum penalty the court may impose is not more than 10 years imprisonment, not more than three years supervised release, not more than a $250,000 fine and a $100 mandatory special assessment? Do you understand that?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Now, Mr. Dunlap, there is a possibility and I know your attorney -- or I believe your attorney has discussed

this with you -- that you may be an armed career criminal. And if you are found to be an armed career criminal, do you understand that the range of punishment under Count Two, if that were to occur, would be that the minimum penalty the court may impose is not less than 15 years imprisonment, while the maximum penalty the court may impose is not more than life imprisonment, again, not more than a $250,000 fine, not more than five years supervised release and $100 mandatory special assessment. Do you understand that, if you are found to be an armed career criminal?

MR. DUNLAP: At Count Two?

THE COURT: Yes, sir.

MR. DUNLAP: And it doesn't relate to Count One? Or are you just asking --

THE COURT: No, it just relates to Count Two.

MR. DUNLAP: Okay. Yes, Your Honor.

THE COURT: And to the charge in Count Two, how do you wish to plead, guilty or not guilty?

MR. DUNLAP: Guilty.

THE COURT: Would you please raise your right hand as best you can?

ANTHONY DUNLAP, DEFENDANT, AFFIRMED

MR. DUNLAP: So help me God?

THE COURT: Yeah. Or you can just affirm if you don't feel comfortable -- if you'll just affirm that the answers to the questions --

MR. DUNLAP: I affirm that the answers that I'm going to give -- about to give will be true.

THE COURT: Okay.

THE COURT: Thank you. Mr. Dunlap, has anyone made any threat of any kind to force you to plead guilty or give up any of the other rights we've discussed this afternoon?

MR. DUNLAP: No, Your Honor.

THE COURT: Has anyone promised you anything to induce you or overcome your will to get you to plead guilty or give up any of the other rights we've discussed?

MR. DUNLAP: No, Your Honor.

THE COURT: Now, I mentioned to you that there was a supervised release term that could be imposed as to both Counts One and Two. As to Count One, it's not more than three years and as to Count Two, if you are not a career criminal, then it's not more than three years. However, as I explained to you, under Count Two if you are found to be an armed career criminal, then that supervised release term is not more than five years that could be imposed. My question for you is this, do you understand that if those terms of supervised release were imposed and then revoked for any reason, that you could be required to serve an additional term of imprisonment of not more than two years as to Counts One and Two if you are not an armed career criminal and then not more than five years on Count Two if you're found to be an armed career criminal, and if that happened, you would receive

no credit for any other time you had spent either in custody or on release?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Do you understand that the court could impose an additional term of supervised release as to Count One and Two, and again, depending on Count Two what your supervised release term would be, which would be governed by the maximum of the statute, minus any time you'd spent in custody as a result of a violation?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Do you understand that from a sentence imposed in your case that there is no parole?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Do you understand that there are Sentencing Guidelines to which the District Court or sentencing court would refer to in an advisory capacity when attempting to fashion a reasonable sentence in your case?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Have you discussed the guidelines with Ms. Mynarich?

MR. DUNLAP: Yes, Your Honor.

THE COURT: And do you understand them?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Do you understand that the final decision as to how the guidelines are calculated and ultimately what sentence

will be imposed rests with the District Judge?

MR. DUNLAP: Yes, Your Honor.

THE COURT: If the District Judge would calculate the guidelines differently from what you've discussed with Ms. Mynarich, that fact would not give you the right to withdraw or change your plea of guilty. Do you understand that?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Once the District Judge establishes the advisory guideline range, in some circumstances, you could be sentenced above that range and, in other circumstances, you could be sentenced below that range. And again, the judge's decision, if you disagreed, would not give you the right to withdraw your plea of guilty. Do you understand that?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Now, Mr. Dunlap, you have a right to a trial by jury with all the protections that I explained to you at the beginning of these proceedings. Do you understand your right to a trial by jury?

MR. DUNLAP: Yes, Your Honor.

THE COURT: And do you understand that if the court accepts your pleas of guilty that there won't be a trial?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Now I'm going to ask you about the offenses charged in Counts One and Two of the Indictment in this case. I would remind you that you are under oath. You must answer

truthfully. Any false answers could result in charges of false swearing or perjury. You always have the right to remain silent. And I want you to listen carefully because in just a moment I'm going to ask the attorney for the United States to state for the record the evidence that he believes he could present at trial to prove or establish your guilt beyond a reasonable doubt to the satisfaction of a judge or jury. Once he's finished, I'm going to ask you if you, in fact, did the things that he's stated for the record that he believes he can prove beyond a reasonable doubt. So I'd ask you just to listen carefully to the attorney for the United States. Mr. Kelleher.

MR. KELLEHER: Thank you. Had this case proceeded to trial, the Government would have established that on or about January 3, 2017, at approximately 4:30 p.m., the Bank of America, then insured by the Federal Deposit Insurance Corporation, located at 633 West Kearney Street, Springfield, Missouri, within the Western District of Missouri, was robbed by an individual later identified as the defendant, Anthony Dunlap. According to the victim teller, the defendant entered the bank and approached her teller station. The defendant seemed suspicious to the teller because he had his hoodie up covering his head. Upon reaching her station, the defendant handed the teller a piece of paper with writing on it. The teller looked at the first sign which read "Stay calm." The teller made eye contact with the defendant who looked toward his hand that was in his coat pocket.

The teller was afraid and believed the defendant made this gesture to indicate that he was armed. The teller removed cash from her teller drawer and placed it on the counter in front of the defendant. The defendant said, "Give me more." The teller removed more cash from her teller drawer which contained a concealed tracking device. The defendant then took the cash, stuffed it into his pockets and left the bank. An audit of the victim teller's drawer revealed that approximately $3,910 in United States currency was taken in the robbery. After the concealed tracking device was given to the defendant, the tracker was activated and corporate security in St. Louis, Missouri, was notified of the activation. The tracking device's location information was relayed to the Springfield Police Department who were ultimately directed to the driveway of 2007 Page Street. Police officers and FBI agents arrived shortly thereafter and made contact with Crystal Tunstall who advised the police that the defendant was still within the vehicle. The officers opened the vehicle door and removed the defendant from the car. As they did so, a large amount of loose cash was dragged out with the defendant. United States currency was also located on the back floorboards of the car. The total amount recovered was approximately $3,910. A loaded Hi-Point .40-caliber pistol, Model JCP, Serial Number 7251793, was also located on the back seat of the car. The pistol was loaded with 10 rounds of .40-caliber ammunition. The defendant was later transported to the

Greene County Jail where he was interviewed. The defendant indicated that he had, in fact, robbed the bank in order to obtain money to buy heroin. He indicated that his girlfriend did not know anything about the robbery. It was later revealed that the defendant had been previously convicted of second-degree robbery in the state of Missouri, a felony which is punishable by a term of imprisonment exceeding one year. The firearm in question was, in fact, manufactured outside the state of Missouri.

      THE COURT: And was there a test done on the firearm to determine if it was operational?

      MR. KELLEHER: The firearm was, in fact, operational.

      THE COURT: Mr. Dunlap, you've listened to the evidence that the Government has stated that they could present at trial to prove or establish your guilt beyond a reasonable doubt. Did you, in fact, do the things that they've stated for the record that they can prove?

      MR. DUNLAP: I agree I was present in the bank. As far as brandishing, making a gesture that I was armed, I don't agree with that. And I disagree with it being implicated that I used -- used the weapon on -- made appearance if I had a weapon. What I do recall is -- maybe the teller questioned me as, you know, where was I going to put the money. I agree that I did go in the bank and gestured I was putting it in my pocket but as far as making a gesture that I had a weapon, no, I don't agree with

that.

THE COURT: Does either party want to clarify?

MS. MYNARICH: I will clarify, Judge. My client admits that he went into the bank and spoke with the teller and gave her a note to give him the money. The teller told the police that he made a gesture. Her understanding of that gesture was that he might have been armed. But there was no gun brandished in the bank. And so we do -- we refuse to admit that he had any sort of firearm in the bank. Now, later, when he was found in the vehicle there was a firearm and we admit that he was in possession of that firearm that was in that vehicle. And so we admit to robbing the bank and we admit to later being in the vehicle with the weapon, the firearm, but we do not agree that he had a firearm with him inside the bank.

THE COURT: Is that your position, Mr. Dunlap?

MR. DUNLAP: Yes, Your Honor.

THE COURT: And, Mr. Kelleher, again, I believe your factual basis was, you know, the note was given to teller and it said "Stay calm" and that there was a gesture towards the pocket that the teller construed as being -- how do you want to characterize that?

MR. KELLEHER: Well, the teller believed that he might be armed. Obviously, there was no brandishing or a display of a firearm by the defendant.

THE COURT: All right. And you agree with that, Mr.

Dunlap?

MR. DUNLAP: Yes, Your Honor.

THE COURT: All right. Well, Ms. Mynarich, you've had access to the Government's discovery file in this case, have you not?

MS. MYNARICH: Yes, Judge.

THE COURT: And in your review of the discovery file, are you satisfied if put to proof, that the United States could make a submissible case as to all the elements pertaining to Counts One and Two of the Indictment as set forth in the factual basis that's been provided today?

MS. MYNARICH: Yes, Your Honor.

THE COURT: There is an adequate factual basis for the pleas of guilty to Counts One and Two. I find that the plea is voluntary and did not result from force, threats or promises. Mr. Dunlap, you are represented in this case by Ms. Mynarich. Have you had enough time to talk with her about your case?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Are you satisfied with the advice that she's given you?

MR. DUNLAP: Yes, Your Honor.

THE COURT: The law requires me to ask you if this afternoon you are on any medication prescribed by a physician or any drugs or alcohol of any kind which would affect your ability to understand these proceedings?

MR. DUNLAP: No, Your Honor.

THE COURT: Understanding that and the other matters that we've discussed this afternoon, is it your desire for the court to accept these pleas of guilty?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Mr. Kelleher, on behalf of the United States, do you have any other record under Rule 11 that you think I need to make?

MR. KELLEHER: No, Your Honor. Thank you.

THE COURT: Ms. Mynarich, on behalf of Mr. Dunlap, is there any further record you believe I need to make under Rule 11?

MS. MYNARICH: No, Your Honor.

THE COURT: I will recommend the pleas of guilty be accepted and I will order a Presentence Investigation to be conducted by the Probation Office. Mr. Dunlap, good luck to you, sir.

MR. DUNLAP: Thank you, Your Honor.

THE COURT: With that, we'll be in recess.

(Court Adjourned at 2:46 p.m.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

/s/ Lissa C. Whittaker — November 22, 2017

Signature of transcriber — Date